IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

THOMAS J. RAYMOND, )
)
Plaintiff, )
)
v. ) Civ. No. 12-151-GMS
)
EUSEHIO RODRIQUEZ, et al., )
)
Defendants. )

## MEMORANDUM

The plaintiff, Thomas J. Raymond ("Raymond"), an inmate at the James T. Vaughn Correctional Center, Smyrna, Delaware, appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 6.)

## I.    BACKGROUND

Raymond filed a complaint and amendments raising failure to protect claims, pursuant to 42 U.S.C. § 1983, against the defendants Sgt. Dorian George ("George") and C/O Jason Foraker ("Foraker") (together "State defendants") and a State assault claim against inmate Eusehio Rodriquez ("Rodriquez"). (D.I. 3, 8.)

Raymond and Rodriquez were housed together. According to Raymond's affidavit, on or about November 10, 2011, he notified a female officer that Rodriquez had a razor blade. (D.I. 8, Pl.'s aff. 1.) She notified C/O Green who conducted a shakedown of the cell occupied by Raymond and Rodriquez, but no razor blade was found. (*Id.*)

On the morning of November 15, 2011, Raymond called George to his cell and gave him a note. (D.I. 8, Pl.'s aff. 2.) The note states:

> I have to speak with you about this guy in this room (he) has already told the Sgt.
> on 12-8 the he was going to F-me up.  This Sgt. should of had him removed from
> this room for making a statement like that.  He talks to himself and he always
> threatening me even though I know that he's all talk.  Now there are only two
> people in this room.  He's told me he was going to hit me and knock me down so I
> sayed [sic] to him is that what they are telling you to do and he said yes.  This guy
> has a mental problem.

(D.I. 8, Pl.'s aff. 2, ex. A.)

According to Raymond's affidavit, after George read the note he told Raymond to get

Rodriquez.  (D.I. 8, Pl.'s aff. 3.)  Rodriquez left and then returned to the room.  (*Id.*)  Raymond

"sensed" that something bad was going to happen to him if he stayed in the room and sought help

from Foraker, who according to Raymond, ignored his pleas and told him to go to his room.  (*Id.*)

Foraker's affidavit states that he believed that Raymond wanted to speak to him prior to the

incident with Rodriquez, but Raymond did not go into details.  (D.I. 163, ex. C.)  Foraker states

that Raymond did not tell him tell him that he was in fear for his life or that he felt threatened by

Rodriquez.  (*Id.*)  Foraker also states that he had no indication that either Raymond or Rodriquez

would have an altercation that day.  (*Id.*)

According to Raymond, when he return to the cell, Rodriquez sliced Raymond's arm with

a razor.  (D.I. 3, ex. B; D.I. 8, Pl.'s aff. 3.)  Rodriquez told Raymond he did it because the DOC

did not take him seriously.  (*Id.*)  At approximately 11:50 a.m. on the same day, Foraker and

another correctional officer were called to Alpha Lower 12.  (D.I. 163, ex. B.)  Foraker noticed

that Raymond had a bloody towel hanging from his hand.  (*Id.*)  He rushed over, and Raymond

told him that Rodriguez had cut him with a razor on his right forearm.  (*Id.*)  Rodriquez had no

apparent injuries.  (D.I. 163, ex. C.)  George was informed, and a Code 8 (*i.e.*, inmate fighting)

was called.  (D.I. 163, ex. B.)  Raymond and Rodriquez were separated and each questioned.

According to Raymond, Rodriquez admitted to the assault. (D.I. 3 at Pl.'s aff.) Rodriguez was searched for a weapon but none was found on his person. In addition, their cell was searched, but no weapon was recovered. (*Id.*) Raymond was taken to medical for treatment and twelve sutures were required. (D.I. 138 at 14.)

Raymond was charged with assault, disorderly or threatening behavior, fighting, failing to obey an order, lying, failing to obey an order/abide by posted regulations and/or assignments. (D.I. 8, ex. C.) He was found guilty of disorderly or threatening behavior and fighting. (D.I. 138 at 5.) Raymond was moved to segregation following receipt of a sanction of fifteen days of isolated confinement with the sanction scheduled to end on November 29, 2011. (D.I. 138 at 5.) A pre-segregation health assessment noted three lacerations to Raymond's right forearm where he had been cut with a razor. (D.I. 138 at 8, 9.)

After he was released from isolation, Raymond filed Grievance No. 236410 on December 5, 2011, complaining that on November 13, 2011, he had notified two unidentified officers in building 21 that his cellmate had a razor. A female officer notified C/O Green who conducted a shakedown of the cell, but no razor blade was found. Raymond stated that the correctional officers put his life in danger when Rodriquez used the same razor to injure him. He asked for an investigation. The grievance was deemed "non grievable." (D.I. 163, ex. E.) On December 6, 2011, Raymond filed Grievance No. 236411 against S/Lt. Reynolds regarding the outcome of his disciplinary hearing. Raymond was informed that the matter was "non grievable." (*Id.*) Raymond submitted Grievance No. 238713 on January 14, 2012, claiming that his life was placed in danger on November 15, 2011 by Foraker and George because they "ignored [his] plea for help" and this "resulted in the above being assaulted by the above's roommate with a razor."

3

(*Id.*) The grievance was returned as "non grievable," as a request not processed through the grievance process, and as filed in an expired filing period. (D.I. 163, ex. E.) It was also returned as a duplicate grievance as the issue was previously addressed in Grievance No. 236410. (*Id.*) Finally, when the grievance was returned, it advised that a request for an investigation should be made to the Unit Commander. (*Id.*)

Raymond raises a State claim of assault against Rodriquez. He alleges that George and Foraker were aware of threats to him by Rodriquez and that they failed to protect him in violation of the Eighth Amendment to the United States Constitution. (D.I. 3 at Pl.'s aff.) Raymond seeks compensatory damages.

Currently pending before the court are numerous motions filed by Raymond including: (1) motions for entry of default, for a hearing on default judgment, and for default judgment (D.I. 87, 93, 94, 95, 97[1]); (2) motions for entry of judgment pursuant to Rule 54 (D.I. 96, 125, 129, 151, 159); (3) request for counsel (D.I. 98); (4) motion to extend time to complete discovery (D.I.100); (5) motions for declaratory judgment (D.I. 101, 102, 132); (6) motions for partial summary judgment (D.I. 104, 105, 106, 107, 108, 150); (7) motions for summary judgment (D.I. 110, 111, 112); (8) motions for hearings (D.I. 113, 152[2]); (9) motion for civil immunity (D.I. 114); (10) motion for the court to rule on motions (D.I. 117); (11) motions to amend (D.I. 116,[3] 118, 160); (12) motions for discovery and to compel (D.I. 97,[4] 128, 139, 141, 145, 157);

---

[1]Docketed as a request and not as a motion.

[2]Docketed as a request and not as a motion.

[3]Docketed as a "sum certain" and not as a motion.

[4]Docketed as a request and not as a motion.

4

(13) motion for the defendants to respond to the plaintiff's motions for summary judgment (D.I. 154[5]); and (14) motion for attorney fees (D.I. 158). Also pending are the State defendants' motion to strike interrogatories (D.I. 141) and motion for summary judgment (D.I. 148).

## II.    REQUESTS FOR DEFAULT/DEFAULT JUDGMENT (D.I. 87, 93, 94, 95, 97)

Rodriquez has been served with the complaint but, to date, has not answered or otherwise appeared. George and Foraker filed an answer to the amended complaint on August 2, 2012. (D.I. 66.) Raymond seeks entry of default and a default judgment. (D.I. 87, 94, 95.) He also seeks default judgment against Rodriquez in the sum of $250,000 and against State defendants and employees or their agents. (D.I. 93.) Finally, Raymond requests a hearing or jury trial on the issue of damages. (D.I. 93, 97.)

"When a party against whom a judgment for affirmative relief has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). It is clear from the record before the court that Rodriquez has "failed to plead or otherwise defend" against the complaint as provided by the Federal Rules of Civil Procedure. Therefore, the court will grant Raymond's motion for entry of default as to Rodriquez. (D.I. 95.) As noted, George and Foraker have appeared and answered the amended complaint. Therefore, the court will deny the request for the entry of default of the State defendants. The Clerk of Court will be ordered to enter a default in appearance against Rodriguez.

Entry of default judgment is a two-step process. Fed. R. Civ. P. 55(a), (b). A party seeking to obtain a default judgment must first request that the clerk of the court "enter . . . the

---

[5]Docketed as a motion to compel.

5

default" of the party that has not answered the pleading or "otherwise defend[ed]," within the time required by the rules or as extended by court order. Fed. R. Civ. P. 55(a). Even if default is properly entered, the entry of judgment by default pursuant to Rule 55(b)(2) is within the discretion of the trial court. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). The court finds premature the remaining motions for entry of default judgment and for hearing on damages given that they were filed prior to entry of default by the Clerk of Court. Said motions will be denied without prejudice to renew. (D.I.87, 93, 94, 97.)

## III.    MOTIONS FOR DECLARATORY JUDGMENT (D.I. 101, 102, 132)

Raymond filed three motions for declaratory judgment asking the court to terminate the controversy between the parties and to award declaratory judgment in his favor on the grounds that the defendants cannot possibly present or provide to the court a genuine issue of material fact to support their case due to the undisputed facts. (D.I. 101, 102, 132.)

Rule 57 of the Federal Rules of Civil Procedure and the Declaratory Judgment Act of 1934 ("the Act") provide that the court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201. Declaratory judgment is inappropriate solely to adjudicate past conduct. *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (unpublished) (citing *Gruntal & Co., Inc. v. Steinberg*, 837 F. Supp. 85, 89 (D.N.J. 1993)). In addition, it is not meant simply to proclaim that one party is liable to another. *Id.* (citing *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1553-54 (Fed. Cir. 1994)).

6

Here, Raymond seeks declaratory judgment solely to adjudicate past conduct and to proclaim the defendants' liability to him. Therefore, the motions are inappropriate. Accordingly, the court will deny the motions for declaratory judgment. (D.I. 101, 102, 132.)

## IV.   MOTIONS FOR ENTRY OF JUDGMENT PURSUANT TO RULE 54
(D.I. 96, 125, 129, 151, 159)

Raymond moves for judgment pursuant to Fed. R. Civ. P. 54(b) and (c) on the grounds that there is more than one claim and there is no just reason for a delay. He seeks judgment against each defendant in the sum of $250,000 per defendant and costs.[6] (D.I. 96, 125, 129, 151, 159.)

Rule 54(b), which governs the certification of final decisions in multiple-claim actions, provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(b).

A decision to certify a final judgment under Rule 54(b) requires two separate findings. First, that there has been a final judgment on the merits and second, that there is no just reason

---

[6]In docket item 159, Raymond seeks to amend his previously filed motion for judgment. The court considers D.I. 159 as an amended motion.

for delay. *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980).  In the instant case the court has not entered a final judgment on the merits.

Rule 54(c) provides:  " A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.  Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  Fed. R. Civ. P. 54(c).  To date, default judgment has not been entered and, therefore, the motion is premature.

Accordingly, the motions will be denied.  (D.I. 96, 125, 129, 151, 159.)

## V.     DISCOVERY MOTIONS (D.I. 97, 100, 128, 139, 141, 145, 157)

On February 14, 2013, the court entered a scheduling order that provided for the initiation of all discovery so that it was completed on or before August 30, 2013.  (*See* D.I. 81.)  On August 13,  2013, Raymond filed an "application for hearing" that requested entry of an order to require the defendants to produce the institutional file of Rodriguez, to produce all write-ups and incident reports given to Rodriquez as a result of the November 15, 2011 incident, and to produce Rodriquez's medical records.  (*See* D.I. 97.)  On August 27, 2013, Raymond filed a motion for an extension of time to complete discovery.  (D.I. 100.)  Therein, he explains that he sent a motion for discovery to the law library for photocopying, but it was not returned to him in "a lame attempt to stop [him] from meeting [his] deadline by the DOC because the DOC is in [his] suit."[7]  On August 29, 2013, Raymond filed a motion asking the court to enter an order for the defendants to provide discovery and inspection.  (D.I. 128.)  Pursuant to Fed. R. Civ. P. 33 and 34, Raymond sought any and all admissible evidence, statements, medical records, medical

---

[7]The Delaware Department of Correction ("DOC") is not a named defendant.

8

health records, write-ups, disciplinary reports, incident reports, policy directives, or other documents which the defendants "used to find the plaintiff guilty."

On September 17, 2013, Raymond filed a motion, construed by the court as a motion to compel, that sought responses from the State defendants to interrogatories and requests for production of documents served upon them, said motion amended on September 24, 2013.[8] (D.I. 139, 145.) The State defendants move to strike as untimely Raymond's interrogatories (D.I. 127), filed on August 29, 2013 and his motion for discovery for inspection, filed on September 4, 2013. (*See* D.I. 141.) Raymond opposes the motion. (D.I. 155.) On September 30, 2013, Raymond filed a motion to compel the State defendants to respond to the second set of interrogatories. (D.I. 157.) Therein, Raymond states that he did not timely serve the second set of interrogatories because he was in the MHU (i.e., medium high housing unit) and, due to scheduling, was unable to go the commissary to purchase stamps. As a result, Raymond was required to send the interrogatories out by a "pay-to."

Raymond's discovery requests at issue, including those served upon the defendants and those in the form of motions filed with the court, are untimely and in derogation of the discovery deadline. The requests and motions did not allow the defendants sufficient time to provide discovery within the time allowed by the Federal Rules of Civil Procedure or before the discovery deadline of August 30, 2013. Nonetheless, as acknowledged by the State defendants, they responded to much of the discovery belatedly served upon them.

---

[8]On September 24, 2013, Raymond filed a motion to amend his motion for production of documents, construed by the court as an amended motion for production of documents directed to State defendants. (D.I. 145.)

Notably, on September 13, 2013, Raymond advised the court that he is "satisfied that discovery is complete" and asked the defendants to accept his proposal, and if they do not, for the court to set a trial date. (D.I. 144.)  Given Raymond's acknowledgment that discovery is complete and that the State defendants responded to discovery even though it was not timely served, the court will deny Raymond's pending discovery motions and will grant the State defendants' motion to strike. (D.I. 97, 100, 128, 139, 141, 145, 157.)

## VI.   MOTIONS TO AMEND (D.I. 116, 118, 160)

On August 27, 2013, Raymond filed two motions to amend:  one to add defendants and the other to amend the *ad damnum* clause to seek damages in the sum of two million dollars. (D.I. 116, 118.)  On September 30, 2013, Raymond filed a second motion to amend the *ad damnum* clause to a sum certain. (D.I. 160.)  Raymond indicates that there are other individuals, including the Commissioner of the DOC, whom he wishes to add as defendants.  Raymond states that the Commissioner is responsible for training correctional officers, that he failed to properly train the officers, and in turn, the officers failed to find the razor blade used to injure him.

Pursuant to Fed. R. Civ. P. 15(a), a party may amend its pleading once as a matter of course within twenty-one days after serving it or, if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or twenty-one days after service of a Rule 12(b) motion, whichever is earlier.  Otherwise, a party may amend its pleading only with the opposing party's written consent or the court's leave.  Rule 15 provides that court should freely give leave to amend when justice so requires.

The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco*

10

*Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990) (citations omitted). Amendment, however, is

not automatic. *See Dover Steel Co., Inc. v. Hartford Accident and Indem.*, 151 F.R.D. 570, 574

(E.D. Pa. 1993). Leave to amend should be granted absent a showing of "undue delay, bad faith

or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of the allowance of the

amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also*

*Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Futility of amendment occurs when the

complaint, as amended, does not state a claim upon which relief can be granted. *See In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). If the proposed

amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the

court may deny leave to amend." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D.

463, 468 (D.N.J. 1990).

  The local rules of this court provide that when seeking to amend, the proposed amended

pleading shall indicate in what respect it differs from the pleading which it amends, by bracketing

or striking through materials to be deleted and underlining materials to be added. *See* D. Del. LR

15.1(b). Raymond did not provide the court with his proposed amendment and, other than to

refer to the Commissioner of the DOC, Raymond does not identify any of the individuals he

wishes to name as defendants. Nor does Raymond provide a reason for his delay in identifying

and naming as defendants individuals who were allegedly involved in the November 2011

occurrence.

  Based on the procedural history of this case, Raymond no longer has the option to file an

amended complaint as a matter of course. *See* Fed.R.Civ.P. 15(a)(1). While the court may freely

grant leave to amend a complaint, based on Raymond's failure to file a brief in support of his motion to amend, his failure to file a proposed amended complaint, and his failure to identify potential defendants, the court is unable to determine if the proposed amendment has merit. Therefore, the motion to amend to add claims and defendants will be denied.  (D.I. 118.)  The court will grant Raymond's motions to amend the *ad damnum* clause.  (D.I. 116, 160.)

## VII.   MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND FOR SUMMARY JUDGMENT (D.I. 104, 105, 106, 107, 108, 110, 111, 112, 113, 114, 148, 150, 152, 154)

Raymond moves for partial summary judgment as to:  (1) the constitutional violations he has raised (D.I. 104); (2) the negligence claims raised (D.I. 105)[9]; (3) the claims raised against the State defendants in the sum of 2.2 million dollars (D.I. 106); (4) George and Foraker for their deliberate indifference (D.I. 107); (5) the liability of defendants (D.I. 108)[10]; and (6) the claims of negligence, deliberate indifference, and constitutional violations (D.I. 150).  Raymond also filed a motion for summary judgment on all claims raised (D.I. 110) against the State defendants (D.I. 111, 112) and based upon his civil immunity (D.I. 114).  In addition, Raymond seeks a hearing on his pending motions for summary judgment (D.I. 113, 152.).  Finally, Raymond filed a motion for the State defendants to respond to his motions for summary judgment (D.I. 154).

---

[9]The motion seeks partial summary judgment as to claims against C/O Zelby ("Zelby"), C/O Green ("Green"), and Beau Biden ("Biden").  However, the foregoing individuals are not named defendants.  Therefore, as to Zelby, Green, and Biden, the motion is moot.

[10]The motion seeks partial summary judgment as to the liability of  George, Foraker, VCC, DOC, Attorney General, and the State of Delaware for their alleged failure to protect him from harm.  However, the VCC, DOC, Biden, and the State of Delaware are not named defendants.  Therefore, as to the VCC, the DOC, Biden, and the State of Delaware, the motion is moot.

The State defendants move for summary judgment on the grounds that: (1) Raymond has not shown that the State defendants possessed knowledge of a substantial risk of serious harm from his inmate roommate and disregarded that danger; and (2) Raymond failed to exhaust his administrative remedies when he failed to file a grievance within seven days of the incident. (D.I. 148, 149.)

## A.     Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the clams in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-461 (3d Cir. 1989). Pursuant to Rule 56(c)(1), a non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by

the opposing party] do not establish the absence . . . of a genuine dispute . . ." Fed. R. Civ. P.
56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view

the evidence in the light most favorable to the nonmoving party and draw all reasonable

inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*,

476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a

reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 247-

249. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-587 ("Where the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue

for trial.'"). If the nonmoving party fails to make a sufficient showing on an essential element of

its case with respect to which it has the burden of proof, the moving party is entitled to judgment

as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322. The same standards and

burdens apply on cross-motions for summary judgment. *Appelmans v. City of Philadelphia*, 826

F.2d 214, 216 (3d Cir. 1987).

### B.      Exhaustion of Administrative Remedies

The State defendants move for summary judgment on the grounds that Raymond has

failed to properly exhaust his administrative remedies as is required by the Prison Litigation

Reform Act ("PLRA") and, in particular, that he did not timely file his grievances. Raymond

responds that he was unable to timely file grievances due to his transfer to isolation, and that he

wrote several letters to prison officials regarding the events of November 15, 2011. (*See* D.I.

162.)

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). The defendants have the burden of pleading and proving failure to exhaust administrative remedies as an affirmative defense in a § 1983 action. *Ray v. Kertes*, 285 F.3d 287, 295-96 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, (2006). "'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion." *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (quoting *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004)). A prisoner must complete the administrative review process in accordance with the applicable procedural rules in order to satisfy the exhaustion requirement of the PLRA. *Nickens v. Department of Corr.*, 277 F. App'x 148, 152 (3d Cir. 2008) (unpublished) (citing *Williams*, 482 F.3d at 639; *Spruill,* 372 F.3d at 228, 231). Perfect overlap between the grievance and the complaint is not required by the PLRA as long as there is a shared factual basis between the two. *Jackson v. Ivans*, 244 F. App'x 508, 513 (3d Cir. 2007)

15

(unpublished) (citing *Woodford*, 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance."). A futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Banks v. Roberts*, 251 F. App'x 774, 776 (3d Cir. 2007) (unpublished) (citing *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000). The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available. *See Spruill*, 372 F.3d at 227-28; *Nyhuis*, 204 F.3d at 67. A grievance procedure is not available, even if one exists on paper, if the defendant prison officials somehow prevent a prisoner from using it. *Mitchell v. Horn*, 318 F.3d 523 (3d Cir. 2003). If prison authorities thwart the inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are "available" to him. *Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002).

The policy for DOC Bureau of Prisons provides for a multi-tiered grievance and appeal process. (D.I. 149, ex. D, Policy No. 4.4 ("Police No. 4.4") effective date Sept. 26, 2011.) First, the inmate must manually complete a grievance form and submit the completed form to the Inmate Grievance Chairperson ("IGC") within seven calendar days of the incident for an attempt at informal resolution. (*Id.* at 5.) The IGC enters data from the grievance form into an automated grievance tracking system. (*Id.*) If the grievance is not resolved through an informal resolution, the grievance is electronically forwarded to the Resident Grievance Committee ("RGC") or the Local Subject Matter Expert ("SME") Panel to schedule a grievance hearing. (*Id.*) Either an RGC or SME hearing is held, followed by RGC/SME Panel recommendations to the facility Warden or appropriate Bureau-Level SME for a decision, and the inmate is notified of the decision. (*Id.* at 6.) If the inmate rejects the decision, an appeal may be submitted to the

Bureau Grievance Officer ("BGO") who conducts a review and makes a recommendation to the

Bureau Chief. (*Id.* at 6-7.) The Bureau Chief either accepts or rejects the BGO recommendation.

(*Id.* at 8.) The decision is final and is not open to further grievant debate. (*Id.*)

The record reflects that Raymond filed three grievances. As acknowledged by the State

defendants, given Raymond's fifteen day confinement in isolation and his inability to submit

grievances during that time, the seven day time-frame for him to submit his grievances began to

run on or about November 30, 2011, when he was released from isolation. Raymond submitted

Grievance No. 236410 on December 5, 2011 and Grievance No. 236411 on December 6, 2011.

Accordingly, the court finds that these two grievances were submitted within the seven day time-

frame as required by Policy No. 4.4. Both grievances were returned as "non grievable." In

Grievance No. 236410, Raymond raised the issue of correctional officers' alleged failure to

protect after they were unable to find a razor in his cell and the razor was later used to injure him

on November 15, 2011.

The State defendants contend that Raymond did not file a grievance alleging any

misconduct with regard to the State defendants until he submitted a grievance on January 14,

2012, Grievance No. 238713. Grievance No. 238713 complains that Raymond's life was placed

in danger on November 15, 2011 by Foraker and George when they "ignored [his] plea for help"

and this "resulted in the above being assaulted." The State defendants argue that, because

Grievance No. 238713 was not submitted within the seven day time-frame (i.e., seven days after

November 30, 2011 as discussed above), Raymond failed to properly exhaust his administrative

remedies.

The State defendants, however, fail to acknowledge that Grievance Nos. 236410 and 238713 are both related to the November 15, 2011 incident and share a factual basis with Raymond's claim that correctional officers failed to protect him.  Indeed, prison officials acknowledged that both grievances shared a factual basis as noted in their return of the January 14, 2012 Grievance No. 238713 on the grounds that it was a "**Duplicate Grievance(s)**.  This issue was previously addressed in **Grievance #236410**."  (D.I. 148, ex. E.) (emphasis added). Timely submitted Grievance No. 236410 raised issues to which the prison system responded.  It is evident from the record that the facts of Grievance No. 236410 formed a basis for Grievance No. 238713 said claim being that prison officials failed to protect him.  Both Grievance No. 236410 and Grievance No. 238713 were returned by prison officials as "non grievable" leaving Raymond with no other available administrative remedy.  Based upon the foregoing, the court finds that Raymond properly exhausted the grievance procedure.

Therefore, the court will deny the State defendants' motion for summary judgment on the issue that Raymond failed to exhaust his administrative remedies.

## C.    Failure to Protect

Raymond moves for summary judgment on the grounds that there is no genuine issue of material fact that the State defendants were negligent and that they failed to protect him from harm in violation of the Eighth Amendment to the United States Constitution.[11]  The State

---

[11]When the court screened the amended complaint that added the State defendants, it liberally construed the allegations as alleging viable failure to protect claims even though Raymond alleged that the State defendants were "negligent in their duties."  Raymond was not allowed to proceed with negligence claims.  Regardless, Raymond speaks to the negligence of the State defendants in his partial motions for summary judgment and in his opposition to the State defendants' motion for summary judgment.  Notably, the United States Supreme Court has held that prison authorities' mere negligence in and of itself does not violate prisoners'

defendants move for summary judgment on the grounds that the evidence of record could not lead a reasonable jury to conclude that the State defendants failed to protect Raymond.

To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to show that (1) he is incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety (the subjective element). *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994); *see also Griffin v. DeRosa*, 153 F. App'x 851 (3d Cir. 2005) (unpublished).

"The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). Knowledge may be shown where the official has actual notice of the risk, *Nami v. Fauver*, 82 F.3d 63, 67-68 (3d Cir. 1996), or where the risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Farmer*, 511 U.S. at 842.

The court concludes after reviewing the evidence of record that there remain genuine issues of fact as to whether the State defendants failed to protect Raymond from harm. Raymond provided the court with affidavits outlining the events of the day. The morning of the assault, Raymond gave George a note voicing his concerns. The noted stated that Raymond had

---

constitutional rights. *See Daniels v. Williams*, 474 U.S. 327, 330-30 (1986). Should Raymond seek to advance a State negligence claim, he must file the appropriate motion. Therefore, the court does not consider the issue of negligence as discussed by Raymond.

previously been threatened by Rodriquez. Following receipt of the note, George spoke to Rodriquez, but the substance of the conversation was not provided to the court. Rodriquez and Raymond remained cellmates and the same day Rodriquez cut Raymond with a razor. Given the paucity of evidence, there remain issues of fact as to what George knew and whether he disregarded a risk of serious harm to Raymond.

As to Foraker, his version of the events of November 15, 2011, and Raymond's version of version of the events of the same day, are at odds with one another. Raymond states that he sought help from Foraker who ignored his pleas and told him to go to his room. Foraker states he believed that Raymond wanted to speak to him prior to the incident with Rodriquez, but Raymond did not go into details. It is not this court's role "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250. Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255. In the instance case, sufficient evidence supporting the claimed factual dispute has been shown such that it requires a jury or judge to resolve at trial the parties' differing versions of the truth. *See e.g.*, *Jackson v. Univ. of Pittsburgh*, 826 F.2d 230, 233 (3d Cir. 1987).

Inasmuch as there remain genuine issues of material fact, the court will deny the parties' motions for summary judgment on the failure to protect issue. (D.I. 104, 105, 106, 107, 108, 110, 111, 112, 113, 114, 148, 150, 152, 154.)

**VIII.   REQUEST FOR COUNSEL AND FOR ATTORNEY'S FEES** (D.I. 98, 158)

Raymond requests counsel to protect his case and claims and to verify that the motions he filed are correct. (D.I. 98.)   In addition, Raymond requests attorney's fees to compensate him for the prosecution of this case.   (D.I. 158.)

Raymond appears *pro se*.   Having considered the record, the court determines that it is appropriate to encourage legal representation for Raymond by an attorney in this case. Therefore, the court will grant the request for counsel.   (D.I. 98.)

Finally, Raymond seeks attorney's fees.   The motion is premature given that neither party has prevailed.   In addition, a *pro se* litigant is not entitled to attorney fees under the Civil Rights Attorney's Fees Award Act.   *Pitts v. Vaughn*, 679 F.2d 311, 313 (3d Cir. 1982).   Raymond is not an attorney and is not entitled to payment for his self-representation.   Accordingly, the court will deny the motion.   (D.I. 158.)

**IX.   CONCLUSION**

For the above stated reasons, the court will:   (1) grant Raymond's request for entry of default as to Rodriquez (D.I. 95); (2) deny Raymond's requests for default as to George and Foraker, motions for hearing on default judgment and all motions for default judgment (D.I. 87, 93, 94, 97); (3) deny Raymond's motions for declaratory judgment (D.I. 101, 102, 132); (4) deny Raymond's motions for entry of judgement pursuant to Rule 54 (D.I. 96, 125, 129, 151, 159); (5) deny Raymond's discovery motions (D.I. 97, 100, 128, 139, 145, 157); (6) grant the State defendants' motion to strike (D.I. 141); (7) grant Raymond's motions to amend the *ad damnum* clause (D.I. 116, 160); (8) deny Raymond's motion to amend to add claims and defendants (D.I. 118); (9) grant Raymond's request for counsel (D.I. 98); (10) deny Raymond's motion for

attorney's fees (D.I.  158); (11) deny as moot Raymond's motion for the court to rule on all

motions (D.I. 117); (12) deny Raymond's partial motions for summary judgment and motions for

summary judgment and for hearing (D.I. 104, 105, 106, 107, 108, 110, 111, 112, 113, 114, 150,

152, 154) ; and (13) deny the State defendants' motion for summary judgment (D.I. 148).  The

matter will be stayed pending the attempt to refer representation of Raymond to a member of the

Federal Civil Panel.

    An appropriate order will be entered.

_____
CHIEF, UNITED STATES DISTRICT JUDGE

__Jm 24__ , 2014
Wilmington, Delaware

22